CLERK'S OFFICE U.S. DISTRICT COURT
AT ABINGDON, VA
FILED

APR 3 0 2026

LAURA A. AUSTIN, CLERK
BY: _____
DEPUTY CLERK

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION**

UNITED STATES OF AMERICA     )
     )
v.     )     **Case No.: 1:25-CR-00035**
     )
PAUL EUGENE WELBORN JR.     )

## AGREED STATEMENT OF FACTS SUFFICIENT TO ESTABLISH A FACTUAL BASIS FOR A PLEA OF GUILTY AS TO PAUL EUGENE WELBORN JR.

This Agreed Statement of Facts Sufficient to Establish a Factual Basis for a Plea of Guilty ("Agreed Statement of Facts") briefly summarizes sufficient facts and circumstances surrounding the criminal conduct of Paul Eugene Welborn Jr. ("Welborn") in this case to establish a factual basis for a plea of guilty. It does not contain all the information obtained during the investigation or all the information applicable to an accurate Presentence Investigation Report or a Sentencing Guidelines calculation. This Agreed Statement of Facts is not protected by proffer agreement or any other agreement, and it shall be wholly admissible at trial notwithstanding any rules or statutes to the contrary.

Welborn committed wire fraud as set forth in Count One of the Indictment. The violation occurred in relation to and involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T.

1

Stafford Disaster Relief and Emergency Assistance Act), and the offense affected a financial institution.

More specifically, on March 13, 2020, the President of the United States declared the ongoing COVID-19 pandemic to be an emergency under § 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. §§ 5121–5207) ("Stafford Act"). The Stafford Act authorizes the U.S. President to issue two types of declarations that enable federal assistance to states and localities in response to public-health incidents such as infectious-disease outbreaks. One type is an "emergency declaration" (authorized under Stafford Act § 501), and the other type is a "major disaster declaration" (authorized under Stafford Act § 401). When the U.S. President declares such an emergency, the Stafford Act permits disbursement from the federal "Disaster Relief Fund." With the presidential declaration in March of 2020, disaster-relief funds became available for release from the Small Business Administration ("SBA") and other agencies. This effort included the Economic Injury Disaster Loan ("EIDL") program administered by the SBA.

During the relevant time, the EIDL program provided low-interest loans to small businesses, renters, and homeowners in regions affected by disasters and emergencies. The SBA established an EIDL program specifically for the COVID-19 emergency.

The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law, enacted in March of 2020, that was designed to provide emergency financial assistance to people affected by the COVID-19 pandemic. The CARES Act authorized the SBA to provide EIDL loans of up to $2 million to eligible small businesses that were experiencing

2

a loss of revenue from the COVID-19 pandemic. In addition, the CARES Act authorized the SBA to issue "advances" of up to $10,000 to small businesses within three days of the business having applied for an EIDL loan. The amount of the advance was based on the number of employees the applicant claimed that the business had. The advances did not have to be repaid, and an advance could be made before a loan was accepted or declined.

To obtain an EIDL loan or EIDL advance, an authorized representative of a qualifying business was required to submit an application to the SBA and provide certain information about the business. The information included the number of employees, gross revenues for the twelve-month period preceding the disaster, and the cost of goods sold in the twelve-month period preceding the disaster. In the case of EIDL loans meant for COVID-19 relief, the twelve-month period was that period preceding January 31, 2020. The applicant was also required to certify that the information in the application was true and correct to the best of the applicant's knowledge. On the application, the applicant was warned that any false statement to the SBA or any misapplication of the loan proceeds could result in criminal penalties.

Applicants submitted EIDL applications directly to the SBA, via the internet. If the SBA approved the application, the amount of the loan was based, in material part, on the information the applicant provided about the business's employment, revenue, and cost of goods, as mentioned above. Any funds issued under an EIDL loan or EIDL advance were provided by the SBA and the U.S. Treasury. EIDL funds could be used to replace lost revenue from the COVID-19 pandemic and pay for business obligations such as payroll, production costs, debts, rent, and mortgage payments. EIDL funds could *not* be used for

3

personal expenses or business expenses unrelated to the loss of revenue from the COVID-19 pandemic.

Welborn applied for an EIDL loan and advance on behalf of Wings of Hope, which he had founded as a nonprofit organization in or around September of 2011. On February 5, 2019, Welborn opened an account in the name of Wings of Hope at First Community Bank in Clintwood, Virginia, which is in the Western District of Virginia. On February 25, 2020, Welborn opened a personal bank account at the Abingdon, Virginia branch of First Community Bank. On or around March 31, 2020, Welborn electronically transmitted to the SBA, via the internet, a fraudulent EIDL application on behalf of Wings of Hope. The application contained multiple material misrepresentations. These misrepresentations included:

a. that, for the twelve months preceding January 31, 2020, Wings of Hope had $2,000,000 of gross revenue when in fact Wings of Hope had little or no revenue from business operations for that period;

b. that, for the twelve months preceding January 31, 2020, Wings of Hope had $2,000,000 in combined annual expenses, which included $330,000 in costs of goods sold, $410,000 in nonprofit costs of operations, and $260,000 in lost business rents, when in fact Wings of Hope's expenses were negligible;

c. that Wings of Hope had twelve employees as of January 31, 2020, when in fact Wings of Hope had minimal operations and no employees as of that date.

The EIDL application advised Welborn about the consequences of making false statements. In addition, Welborn later signed a loan agreement, which again certified that

4

all statements in the EIDL application were "true, correct, and complete," and which advised Welborn of the consequences of misapplying loan proceeds.

On or about June 9, 2020, based on the fraudulent application, the SBA approved and then funded a total of $159,900 through a $10,000 "advance" and a $149,000 loan deposited into the Wings of Hope account at First Community Bank. The advance and loan disbursements were initiated by the SBA Denver Finance Center in Denver, CO, which transmitted the payment information through the "FMS" system to the U.S. Treasury. For the eight months preceding June 2020, there had been no activity at all in that bank account, and the cash balance had been less than $1000 for nearly a year. Welborn then used the SBA funds for numerous personal expenses, including purchases at QVC, HSN, Amazon, Macy's, Best Buy, Omaha Steaks, and fast-food restaurants. In addition, through at least June of 2023, Welborn made a series of withdrawals of the SBA funds and transferred portions of the SBA funds between various bank accounts, at First Community Bank and BB&T/Truist. Since obtaining the funds from SBA, Welborn has made payments toward the loan.

This is not all the government's evidence, but it establishes the elements of the charge to which Mr. Welborn is pleading guilty. By signing below, Paul Eugene Welborn Jr. affirms that he has reviewed this Agreed Statement of Facts with his attorney, and that he agrees it is true and accurate. He further agrees that, had this matter proceeded to trial, the government would have proven the facts outlined above beyond a reasonable doubt.

5

4/30/26

Date

_____

Paul Eugene Welborn Jr.
Defendant

4·30·26

Date

_____

Matthew Hill, Esq.
Assistant Federal Public Defender
Attorney for Defendant

April 30, 2020

Date

_____

Whitney D. Pierce
Assistant United States Attorney

6